The Honorable David W. Christel

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROSARIO ABEL "JOAQUIN"<br>CAMARGO BANUELOS, et al.,<br><br>Defendants. | NOS.  CR25-5166DGE<br>MJ25-5301DWC<br>MJ25-5306DWC<br>MJ25-5307DWC<br><br>UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION MOTIONS |
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEREL GABELEIN,<br><br>Defendant. | |
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AARON KNAPP,<br><br>Defendant. | |
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HARDMAN,<br><br>Defendant. | |

Memorandum in Support of Detention - 1
*United States v. Camargo Banuelos, et al.*. CR25-5166DGE
*United States v. Gabelein, Knapp, Hardman,*
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## I. INTRODUCTION

The United States respectfully submits this memorandum in support of its detention motions in this matter. This memorandum will provide a brief overview of the investigation that led to these charges, summarize the applicable law relating to detention, and address specific facts presently known to the government and relevant to the individual defendants' continued detention.

## II. BACKGROUND OF THE INVESTIGATION

This case arose out of an investigation conducted by the Drug Enforcement Administration (DEA) and other federal and local law enforcement agencies. The investigation focused on a drug trafficking organization (DTO) based out of Mexico, with ties to the state of Sinaloa. The DTO engages in the trafficking of drugs including methamphetamine, fentanyl, heroin, and cocaine throughout Western Washington and elsewhere. The drug trafficking activities in which the members of the DTO engage include the transportation of bulk quantities of drugs from the Mexican border region to Western Washington, the operation of drug stashes throughout Western Washington, and the delivery of drugs to area redistributors in bulk quantities including pounds of methamphetamine, kilograms of fentanyl, and thousands of fentanyl pills at a time to a large number of customers who would purchase these drugs for further distribution. The DTO also engages in money laundering through various means intended to transfer proceeds of drug trafficking to DTO leaders in Mexico.

The investigation identified numerous individuals affiliated with the DTO, including leaders who operated from Mexico along with local organizers and DTO workers who carry out the distribution from Western Washington as well as local redistributors who are supplied by the DTO. Investigators refer to this network of suspected drug traffickers as the CAMARGO BANUELOS DTO.

//

//

Memorandum in Support of Detention - 2
*United States v. Camargo Banuelos, et al.*. CR25-5166DGE
*United States v. Gabelein, Knapp, Hardman,*
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

This investigation ultimately led to the use of court-authorized Title III wire interceptions. In total, agents received authorization to intercept ten separate target telephones, with interceptions occurring between August 2023 and July 2024.

Wiretap interceptions, search warrants, controlled purchases of narcotics, and other investigative techniques revealed a conspiracy to distribute massive amounts of methamphetamine, fentanyl, heroin, cocaine, and other drugs. Prior to the execution of search warrants related to the arrests of defendants based on the present indictment, investigators made numerous seizures in various enforcement actions targeting DTO-affiliated targets, seizing fentanyl pills, fentanyl powder, crystal methamphetamine, heroin, cocaine, cash drug trafficking proceeds, and firearms from individuals involved in the drug trafficking conspiracy.

During the coordinated arrests and searches that took place on August 4, 2025, law enforcement seized additional evidence from numerous locations in Washington, including approximately: nine kilograms of methamphetamine, 5.4 kilograms of fentanyl, 3.8 kilograms of cocaine, 1.2 kilograms of heroin, and 2.5 kilograms of GHB. Agents also seized firearms including seven pistols and three rifles and approximately $342,000 in suspected cash proceeds of drug trafficking.[1]

### III.    LEGAL STANDARDS FOR DETENTION

The Bail Reform Act provides that a court should detain a defendant pending trial if "no condition or combination of conditions . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

The Bail Reform Act identifies four factors that a court should consider in analyzing detention issues: "(1) The nature and circumstances of the offense charged, including whether the offense . . . involves a narcotic drug; (2) the weight of the evidence

---

[1] Evidence collected since August 4 is still being documented at this time. These totals are estimates.

Memorandum in Support of Detention - 3
*United States v. Camargo Banuelos, et al.*. CR25-5166DGE
*United States v. Gabelein, Knapp, Hardman,*
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

. . . ; (3) the history and characteristics of the person, including . . . family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, . . . ; and . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . ." 18 U.S.C. § 3142(g). Of these factors, the weight of evidence is least important, and the statute neither requires nor permits pretrial determination of guilt. 18 U.S.C. § 3142(g).

The United States typically bears the burden of showing that a defendant poses a danger to the community by clear and convincing evidence, and it bears the burden of showing that a defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991). However, where, as here defendants are charged with one or more serious Title 21 offenses, the Bail Reform Act expressly provides:

> [s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq*.) . . . or an offense under section 924(c) . . . of title 18 of the United States Code . . .

18 U.S.C. § 3142(e). The return of an indictment is sufficient to support a finding of probable cause, triggering the rebuttable presumption. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985); *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986); *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991).

In a case where the presumption applies, courts have found that the *defendant* bears the burden of producing evidence that he does not pose a danger to the community or risk of flight in order to rebut the presumption. *See United States v. Abad*, 350 F.3d

Memorandum in Support of Detention - 4
*United States v. Camargo Banuelos, et al.*. CR25-5166DGE
*United States v. Gabelein, Knapp, Hardman,*
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

793, 797 (8th Cir. 2003); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001); *Stricklin*, 932 F.2d at 1354. The government retains the burden of persuasion. *Mercedes*, 254 F.3d at 436.

However, even if a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear. Rather, it remains a factor to be considered among those weighed by the district court. *See Stricklin*, 932 F.2d at 1354-55; *Mercedes*, 254 F.3d at 436; *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). If the presumption were to vanish once a defendant produced *some* evidence, courts would not give adequate deference to the fact that Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir.1986); *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989).

Finally, it is well-settled that at a detention hearing the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g. United States v. Salerno*, 481 U.S. 739, 743 (1987); *United States v. Winsor*, 785 F.2d 757 (9th Cir. 1986); *United States v. Cardenas*, 784 F.2d 937 (9th Cir.), *vacated as moot upon defendant's conviction*, 792 F.2d 906 (9th Cir. 1986). Magistrates are permitted to make decisions as to detention or release on hearsay evidence, "such as statements from the prosecution or the defendants about what they can prove and how. . . . Often the opposing parties simply describe to the judicial officer the nature of their evidence, they do not actually produce it." *United States v. Acevedo-Ramos*, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, C.J.).

The statements of fact contained below, which are based on the sworn wiretap and search warrant affidavits, summaries of the results of said searches and wiretap interceptions, official reports of investigation, and information obtained at the time of the defendants' arrests, is presented as such a proffer.

Memorandum in Support of Detention - 5
*United States v. Camargo Banuelos, et al.*. CR25-5166DGE
*United States v. Gabelein, Knapp, Hardman,*
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

As to the defendants who are of Mexican citizenship and have no legal status in the United States, illegal entry to the United States is a recognized basis for finding a defendant untrustworthy and unreliable and thus a flight risk. *See, e.g., United States v. Erazo-Calix*, No. 1:24-cr-00150-AKB, 2024 WL 4505038 at *4 (D. Id. Oct. 16, 2024) (finding defendant's argument that unlawful entries to the United States indicate a "desire to return" unconvincing because it ignores "flagrant disregard" for the law and because defendant could flee in violation of pretrial release while remaining in the U.S.)

## IV. INDIVIDUAL DEFENDANTS' ROLES AND CONDUCT

The following is a summary of some of the facts related to certain individual defendants related to their roles in and conduct during the conspiracy that is related to the danger they present to the community and their risk of flight.[2]

### A. IVAN GARCIA CAMACHO

GARCIA CAMACHO is a 30-year-old drug distributor associated with the DTO. GARCIA CAMACHO's phone was the subject of a court-authorized wiretap, during which investigators learned GARCIA CAMACHO was discussing trafficking multiple types of drugs, including methamphetamine, fentanyl pills, cocaine, and Xanax.

GARCIA CAMACHO facilitated two methamphetamine sales to an undercover agent (UC) in October 2023 (as reflected in Counts 5 and 6 of the Indictment). In conversations with a UC, GARCIA CAMACHO agreed to sell approximately two pounds of methamphetamine on each occasion, arranged to meet the UC, and had co-defendant Jose Ruben MEJIA ORTIZ (who is currently a fugitive believed to be in Mexico) deliver the methamphetamine at their meetings.

---

[2] This summary does not include all of the evidence in support of the charges in the indictment, but rather is intended to illustrate some of the conduct that the defendants engaged that supports a determination that they present a danger to the community and a risk of flight. Information in this section is based on facts obtained from search warrant and wiretap applications in this investigation, and seizures, observations, and other evidence gathered by law enforcement as part of the investigation. References to criminal history are based on a review of NCIC criminal history reports.

Memorandum in Support of Detention - 6
*United States v. Camargo Banuelos, et al..* CR25-5166DGE
*United States v. Gabelein, Knapp, Hardman,*
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

GARCIA CAMACHO also sold an additional approximately two pounds of methamphetamine to a UC in April 2024 (as reflected in Count 15 of the Indictment), and arranged for the delivery of approximately five additional pounds of methamphetamine by co-defendant Eder RAMIREZ PINO (who is currently a fugitive). This later delivery was seized by law enforcement (as reflected in Court 16 of the Indictment).

GARCIA CAMACHO is from Mexico and is believed to have entered the United States approximately five years ago. GARCIA CAMACHO has no legal residency status in the United States. On August 4, 2025, officers attempting to arrest GARCIA CAMACHO on the warrant issued in this case located him at a tire shop in Everett, Washington, where he ran from the officers when he saw them arrive, before being taken into custody.

**B.    ROSENDO VAZQUEZ MEDRANO**

VAZQUEZ MEDRANO is a 38-year-old drug distributor associated with the DTO. Phone records have shown he is in frequent contact with co-defendant Rosario "Joaquin" CAMARGO BANUELOS, a DTO leader believed to be in Mexico.

In March of 2024, the Snohomish County Sheriff's Office (SCSO) stopped a vehicle driven by VAZQUEZ MEDRANO and found cocaine, fentanyl pills, methamphetamine, and heroin, as well a stolen handgun and boxes of ammunition. One of VAZQUEZ MEDRANO's passengers had been identified on Facebook Messenger discussing purchasing fentanyl and methamphetamine from co-defendant MEJIA ORTIZ.

Two months later, in May 2024, VAZQUEZ MEDRANO was again stopped by the SCSO. VAZQUEZ MEDRANO was the passenger, but the same individuals were in the car as before. VAZQUEZ MEDRANO had a digital scale concealed on the seat underneath his leg, and he had cocaine and fentanyl pills in his pockets. Drugs were again found in the vehicle, including fentanyl pills, fentanyl powder, cocaine, methamphetamine, and Xanax. Also found in the vehicle were cutting agents, scales, baggies, a drug ledger, and another stolen handgun.

Memorandum in Support of Detention - 7  
*United States v. Camargo Banuelos, et al.*. CR25-5166DGE  
*United States v. Gabelein, Knapp, Hardman,*  
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY  
1201 PACIFIC AVE., SUITE 700  
TACOMA, WASHINGTON 98402  
(253) 428-3800

VAZQUEZ MEDRANO was out of custody in June 2024 when he contacted a UC and offered to sell fentanyl pills, Xanax, and methamphetamine (as reflected in Count 22 of the Indictment). VAZQUEZ MEDRANO arranged for a meeting with the UC and for co-defendant Juan Carlos GARCIA OLAIS to deliver approximately two pounds of methamphetamine to the UC.

On May 15, 2025, VAZQUEZ MEDRANO sold a UC approximately four ounces of fentanyl.

VAZQUEZ MEDRANO was arrested on August 3, 2025, after the UC contacted him to purchase methamphetamine. VAZQUEZ MEDRANO offered to sell the UC a half kilogram of fentanyl and met with the UC for that purpose, at which point he was taken into custody. Another individual arrived at the meeting place with methamphetamine, fentanyl, cocaine, and heroin; a replica firearm was found under the driver's seat of this vehicle.

C.  **ISABEL VILLARREAL ZAPIEN**

VILLAREAL ZAPIEN is a Mexico-based truck driver who made deliveries of drugs he transported from Mexican-border regions to Western Washington and brought drug proceeds south to be delivered to the DTO in Mexico.

In October 2023, VILLAREAL ZAPIEN delivered approximately 90 pounds of methamphetamine and 42 pounds of fentanyl powder to a DTO associate in Seattle (as reflected in Count 7 of the Indictment). These drugs were seized by the King County Sheriff's Office.

Again, in January 2024, VILLAREAL ZAPIEN delivered approximately 24 pounds of fentanyl powder, 13 pounds of cocaine, 2.6 pounds of methamphetamine, and a pound of heroin to co-defendant MEJIA ORTIZ. VILLAREAL ZAPIEN was arrested and found to have $23,000 in his truck, which he was transporting back to Mexico.

VILLAREAL ZAPIEN was in King County custody awaiting related charges when he was arrested on the instant charges.

Memorandum in Support of Detention - 8
*United States v. Camargo Banuelos, et al..* CR25-5166DGE
*United States v. Gabelein, Knapp, Hardman,*
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### D. ISRAEL DAVIS

Israel DAVIS is a local drug redistributor who obtain his drug supply from the DTO. DAVIS was intercepted on judicially authorized wiretaps discussing the purchase of drugs from co-defendant and DTO leader Francisco CAMARGO BANUELOS, and co-defendant MEJIA ORTIZ, who are both now believed to be in Mexico. In these calls, DAVIS discussed purchasing tens of thousands of fentanyl pills and kilogram quantities of fentanyl powder. DAVIS also stated that he had sold ten kilograms in a single day.

DAVIS has a criminal history that includes a prior federal conviction for conspiracy to distribute methamphetamine, for which he served a sentence of 188 months.

DAVIS's residence was searched on August 4, 2025. DAVIS was present and he was arrested. In his residence, agents located approximately $137,000 in suspected drug trafficking proceeds. Agents also located a firearm in a Mazda that DAVIS admitted driving, and fentanyl, heroin, and cocaine in the Mercedes-Benz that he had been observed driving.

### E. ALEX PHAN

Alex PHAN was identified as a drug redistributor supplied by the DTO. PHAN communicated directly with co-defendant and DTO leader Francisco CAMARGO BANUELOS, who is believed to be in Mexico, and discussed drug trafficking with details that demonstrated he had been obtaining drugs for redistribution from Francisco CAMARGO BANUELOS for some time. In these calls, PHAN emphasized his customer base to Francisco and that his buyers were interested in significant quantities of drugs.

On August 29, 2024, in a separate investigation by Homeland Security Investigations (HSI), PHAN was intercepted on a judicially authorized wiretap discussing a suspected drug transaction. HSI agents surveilled the suspected transaction, then attempted to conduct a traffic stop of PHAN's vehicle with lights and sirens activated. PHAN did not stop for law enforcement. During the effort to conduct the traffic stop, a

Memorandum in Support of Detention - 9  
*United States v. Camargo Banuelos, et al.*. CR25-5166DGE  
*United States v. Gabelein, Knapp, Hardman,*  
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY  
1201 PACIFIC AVE., SUITE 700  
TACOMA, WASHINGTON 98402  
(253) 428-3800

law enforcement vehicle made contact with the rear of PHAN's vehicle, and PHAN's vehicle struck another law enforcement vehicle. Despite damage to his vehicle, PHAN did not stop and drove away from the scene. Further pursuit was not initiated.

PHAN's home was searched by federal agents on October 30, 2024, and agents located approximately a pound of fentanyl pills along with crack cocaine.

### F. DEREL GABELEIN

Derel GABELEIN was identified as a drug redistributor who is supplied by the DTO. GABELEIN communicated directly with co-defendant and DTO leader Francisco CAMARGO BANUELOS, who is believed to be in Mexico. Intercepted communications between Francisco CAMARGO BANUELOS and DTO distributors corroborated deliveries of drugs were made to GABELEIN on Whidbey Island, where he resides. Further, Facebook Messenger messages indicate GABELEIN used the service to coordinate drug transactions, including discussing the purchase of heroin and cocaine from co-defendant Rosendo VAZQUEZ MEDRANO.

GABELEIN's home was searched on August 4, 2025. There, agents found several packages of suspected methamphetamine, fentanyl, and other controlled substances. Agents also located large packages of bulk cash, suspected of being proceeds of drug trafficking. GABELEIN appears to have unlawfully possessed two rifles, which were found in a shed next to paperwork in GABELEIN's name.

### G. AARON KNAPP

Aaron KNAPP was identified as a drug redistributor who is supplied by the DTO. KNAPP communicated directly with co-defendant and DTO leader Francisco CAMARGO BANUELOS, who is believed to be in Mexico. Beginning in February 2024, agents determined that DTO distributors regularly made trips for suspected drug deliveries to KNAPP's residence. For example, between July 30 and November 28, 2024, known DTO distributors made ten separate trips to KNAPP's residence, staying for a short time before leaving.

Memorandum in Support of Detention - 10  
*United States v. Camargo Banuelos, et al..* CR25-5166DGE  
*United States v. Gabelein, Knapp, Hardman,*  
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY  
1201 PACIFIC AVE., SUITE 700  
TACOMA, WASHINGTON 98402  
(253) 428-3800

On August 4, 2025, agents executed a search warrant on KNAPP's residence where he was present. In a tool shed located in front of the door to KNAPP's residence, agents recovered a large number of packages of fentanyl pills, with a total gross weight of approximately eight pounds.

KNAPP is on supervised release in WDWA case number CR14-347TSZ, a case in which he was sentenced to 120 months' imprisonment for Possession of Methamphetamine with Intent to Distribute and Possession of Firearms in Furtherance of a Drug Trafficking Crime. A violation petition has been filed by his U.S. Probation Officer based on his arrest and indictment in this case, and an arrest warrant has been issued for those violations, for which he has yet to appear.

**H.    JOHN HARDMAN**

John HARDMAN was identified as a drug redistributor who is supplied by the DTO. Based on judicially authorized wiretap interceptions, agents learned that HARDMAN communicated directly with co-defendant and DTO leader Francisco CAMARGO BANUELOS, who is believed to be in Mexico, to set up drug transactions. These included discussions of HARDMAN purchasing thousands of fentanyl pills and multiple kilogram quantities of fentanyl powder.

On August 4, 2025, agents executed a search warrant on HARDMAN's residence, which resulted in the discovery of approximately $57,000 in suspected cash drug proceeds. Inside the oven in HARDMAN's kitchen was approximately half a kilogram of fentanyl powder. A search of HARDMAN's phone revealed text messages with DTO leader Francisco CAMARGO BANUELOS. These messages indicated that HARDMAN had been purchasing multiple kilograms of fentanyl from the DTO on a repeated basis in the weeks preceding his arrest.

//

//

Memorandum in Support of Detention - 11
*United States v. Camargo Banuelos, et al..* CR25-5166DGE
*United States v. Gabelein, Knapp, Hardman,*
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## V. CONCLUSION

For the reasons set forth above, the government respectfully submits that the above defendants are unable to overcome the presumption against detention that applies to this matter, that they each represent a risk to the community and a risk of nonappearance, and should therefore be detained pending trial.

DATED this 7th day of August, 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

  */s/ Max B. Shiner*
MAX B. SHINER
CRYSTAL CORREA
Assistant United States Attorneys
1201 Pacific Ave., Suite 700
Tacoma, WA 98402
Telephone: (253) 428-3800
E-mail: max.shiner@usdoj.gov
crystal.correa@usdoj.gov

Memorandum in Support of Detention - 12
*United States v. Camargo Banuelos, et al..* CR25-5166DGE
*United States v. Gabelein, Knapp, Hardman,*
MJ25-5301DWC / MJ25-5306DWC / MJ25-5307DWC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800